IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KESHA GREGERSON and
CHASE HENDRICKSON,

                Plaintiffs,                      OPINION AND ORDER

    v.

                                                        24-cv-106-wmc

AUTO-OWNERS INSURANCE COMPANY,

                Defendant.

---

This civil case was removed from state court based on diversity jurisdiction and involves an insurance dispute over the amount of loss that plaintiffs Kesha Gregerson and Chase Hendrickson sustained as a result of a fire in their home. Specifically, plaintiffs' insurer, defendant Auto-Owners Insurance Company, acknowledged coverage and issued a cash payment to plaintiffs for repairs, but plaintiffs objected, contending that the house must be rebuilt and not merely repaired. After the parties engaged in negotiations for a few months, plaintiffs hired an attorney and filed suit in the Circuit Court for Columbia County, Wisconsin, on January 16, 2024, asserting various breach of contract and bad faith claims against Auto-Owners. After removing the case to this court on February 16, 2024, and answering the complaint, Auto-Owners sent a letter to plaintiffs demanding appraisal under a provision in the insurance policy permitting either party to demand an appraisal. When plaintiffs rejected its demand, Auto-Owners filed a motion to compel appraisal and stay proceedings before this court, which is now before the court. (Dkt. #9.) For the reasons explained below, the court will deny Auto-Owners' motion.

FACTS[1]

On July 9, 2023, the house owned by plaintiffs Kesha Gregerson and Chase Hendrickson sustained damage in a fire. Soon thereafter, plaintiffs filed a claim (no. 300-0432784-2023) with its insurer, Auto-Owners, which in turn requested proof of the loss. Claim Representative Travis Heiting issued plaintiffs an initial payment for covered losses on July 31, 2023, and in early August of 2023, he also sent plaintiffs an estimate for the total cost of repairs on an "actual cash value" basis of $186,845.78. However, on August 8, 2023, plaintiff Gregerson forwarded to Heiting an alternative repair estimate from Spring Brook Construction, which noted repairs missing from Auto-Owners' estimate and then concluded that "[c]onsidering the rapid growth of mold in the structure since the fire, it is the opinion of Spring Brook Construction's general contractors that the structure be razed to the foundation and replaced." (Dkt. #19-1, at 1.)

Throughout the fall of 2023, Heiting continued to communicate with Gregerson about the actual amount of loss plaintiffs could claim under their policy. On October 30, 2023, Gregerson informed Heiting in an email that a complete replacement of the home would be easier and discussed replacement cost estimates. Having reviewed expert reports concerning the scope and extent of damage to the house, however, Heiting told Gregerson that Auto-Owners would not be making any changes to its initial estimate. (Dkt. #18, at 5.) In addition, Auto-Owners says that it never received a final contract from Spring Brook

---

[1] The following facts are drawn from the complaint (dkt. #1-1), the insurance policy (dkt. #18-2), and affidavits submitted by the parties (dkt. ##12 and 19). They appear to be undisputed unless otherwise noted.

Construction, nor any *definitive* statement from plaintiffs that they were fully replacing their house. (*Id*.)

On December 7, 2023, Heiting again reached out to Gregerson, asking how she intended to proceed with the repair or replacement of her house, but he did not receive a response directly from her. Heiting next sent Gregerson another email on December 20, 2023, including an "adjusted" estimate adding the costs for flooring material. He also again questioned whether Gregerson was going to repair or replace the house and asked that she inform Auto-Owners when plaintiffs decided. Hearing no response, Heiting emailed Gregerson a third time on January 8, 2024, asking for an update.

In an email to Heiting dated January 10, 2024, Justin Wallace of Wallace Law informed him that Gregerson and her family had retained his firm to represent them, then stated:

> As Auto-Owners is fully aware, there is no contractor willing to do the repair work on Ms. Gregerson's house that Auto-Owners has theorized to try to save money. She is going to replace the current structure with a house that is built off-site and moved here; this will limit the time when her and her family are homeless and allow them to get into something within a reasonable timeframe. We can't imagine Auto-Owners could need any more time with the structure given that it has reached final payment decisions here after an inspection but let me know if I'm wrong.
>
> More, my client has asked umpteen times when she can expect the depreciation payment and she can't get an answer. Does AO intend to withhold her repair depreciation because she is replacing her house?
>
> Finally, we provided previous correspondence about the uselessness of theoretical repair estimates.

(Dkt. #12-4.)

That same day, Heiting spoke with Attorney Wallace over the telephone. However, the parties dispute exactly what was said during the call. Heiting reports telling Wallace that he was waiting on plaintiffs to provide additional documents showing that contractors had stated the home could not be repaired. In contrast, Wallace maintains Heiting confirmed that Auto-Owners was comfortable with its position on the claim, which Wallace interpreted to mean that Auto-Owners was not going to be doing any further work on the matter.

Regardless what was actually said, within just a few days, plaintiffs filed suit on January 16, 2024, in the Columbia County Circuit Court and purportedly began rebuilding their house in order to meet what they say was defendant's 12-month deadline to recover depreciation.[2] Auto-Owners removed the case to this court on February 16, 2024, and in conjunction with its answer to plaintiffs' complaint, demanded an appraisal on March 8, 2024, as it claims was contemplated by the parties' insurance policy. (*See* dkt. ##8 and 8-2.) The relevant provision in the policy reads as follows:

> **c. Appraisal**
>
> If you and we fail to agree on the actual cash value or amount of loss covered by this policy, either party may make written demand for an appraisal. Each party will select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The

---

[2] Plaintiffs assert in their response brief that this 12-month deadline put them in a "catch 22" of having to complete the rebuild by July 2024 to recover insurance payments and being unable to do any work lest Auto-Owners accuse it of malfeasance. Defendant states that the house was actually razed in early March 2024.

>appraisers will then appraise the loss, stating separately the actual cash value and loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the actual cash value or amount of loss.
>
>Each party will pay the appraiser it chooses, and equally pay the umpire and all other expenses of the appraisal. We retain our right to deny the claim in the event there is an appraisal.

(Dkt. #8-1.)

## OPINION

Defendant has now moved to compel an appraisal under the homeowner's policy issued plaintiffs, arguing that it has satisfied both prerequisites for invoking appraisal under the policy: a disagreement concerning the amount of loss and a written demand for appraisal. Plaintiffs oppose appraisal on the ground that defendant's right to demand appraisal extinguished when plaintiffs filed their lawsuit. In support of this argument, plaintiffs cite *Lynch v. American Family Mutual Insurance Co.*, 163 Wis. 2d 1003, 473 N.W.2d 515 (Wis. Ct. App. 1991), in which the Wisconsin Court of Appeals held that "absent a policy provision to the contrary, an insurance company may not demand an appraisal of a loss after the commencement of an action by the insured on that loss, when the insurance company failed to demand the appraisal prior to the lawsuit even though it had an opportunity to do so." *Id*. at 1008, 473 N.W.2d at 517. The Wisconsin Supreme Court later emphasized, albeit in dicta that:

>*Lynch* did not hold that invocation of a binding appraisal clause is *per se* precluded after one party files suit. Rather, *Lynch* held that the insurer in

5

that case could not invoke the appraisal clause when it 'had ample opportunity' to do so before suit was filed.

*Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.*, 2009 WI 73, ¶ 36, 319 Wis. 2d 52, 70, 768 N.W.2d 596, 605 (quoting *Lynch*, 163 Wis. 2d at 1013 but not determining its application because parties had already agreed in writing to proceed with an appraisal process).

Unfortunately, Wisconsin courts have provided little insight on what constitutes an "ample opportunity" to demand appraisal. *Hansen Storage Co. Inc. v. Emps. Mut. Cas. Co.*, No. 23-cv-362, 2024 WL 2708379, at *3 (E.D. Wis. May 3, 2024). Defendant argues that *Lynch* is outdated, pointing out that the Second Circuit and most courts addressing the issue of the timing of appraisal demands in other states have adopted a more flexible approach than *Lynch*. However, defendant has failed to cite *any* convincing authority holding that the 1991 holding in *Lynch* does not remain good law in Wisconsin, and, of course, the Wisconsin Supreme Court's 2009 decision in *Farmers* confirming its relevance and flexibility is persuasive authority to the contrary. In *Farmers*, the supreme court also stated in dicta that "it [was] far from conclusive that *Lynch* would have prevented [the insurer] from invoking and enforcing the appraisal process," 2009 WI 73, ¶ 36, even though the insurer demanded appraisal a year after the policyholder filed suit and two years after the loss occurred and the parties had exchanged estimates. *Id*. at ¶¶ 4-15. Ten years later, however, the Wisconsin Court of Appeals distinguished *Lynch* in an unpublished decision, *Park Meadows Homes Ass'n, Inc. v. Am. Fam. Mut. Ins. Co.*, 2019 WI App 48, ¶ 28, 388 Wis. 2d 476, 934 N.W.2d 581, noting that "[u]nlike the insurer in *Lynch*, American Family had repeatedly requested an amount of loss, pursuant to the policy language, and did not receive it in response prior to the commencement of this

6

action."  Finally, in a more recent case, the Eastern District of Wisconsin held that the insurer did not have ample opportunity to invoke the binding appraisal provision prior to the policyholder filing suit because, "[a]lthough it's undisputed that Hansen provided an estimate of its loss in February 2022, it wasn't clear that the parties had failed to reach agreement about the amount of loss until much later." *Hansen*, 2024 WL 2708379, at *4.

Contrary to defendant's assertions, the parties in this case appear to have failed to reach an agreement not just about the amount of loss to plaintiffs' home before plaintiffs filed suit on January 16, 2024, but as to how it should be measured, by repair or replacement value.  Indeed, the later was at a fully obvious impasse well before plaintiff filed suit, and renders the contemplated appraisal process difficult to pursue even if defendant's demand were timely.  While Heiting avers that he still has never received a definitive answer from Gregerson about whether she would repair or replace her home, he surely knew that a dispute existed on this issue between the parties by July or August of 2023, almost six months before plaintiff filed suit.  Indeed, on August 8, 2023, plaintiff Gregerson had forwarded Heiting her contractor's written opinion that the house needed to be razed and rebuilt, along with an estimate for the home's complete reconstruction, *and* Heiting had also made clear that experts hired by defendant reached the opposite

7

conclusion. Accordingly, on behalf of Auto-Owners, Heiting issued plaintiffs an actual cash value payment based on the cost of repairs and not replacement.[3]

Thus, while defendant contends that it was still adjusting plaintiffs' claim and remained optimistic that it could be resolved at the time plaintiffs filed their lawsuit, this does not change the fact that a long-standing dispute existed, not just as to the amount of loss but what method should be used to evaluate it, well before plaintiffs decided to file their lawsuit.

In sum, defendant has failed to show that it did not have "ample opportunity" to demand an appraisal under the policy after its lengthy communications with plaintiffs in late October 2023, and certainly after hearing from plaintiffs' attorney in January 2024. Accordingly, defendant's motion to compel appraisal only after plaintiffs filed suit on January 18, 2024, will be denied.

---

[3] The crux of the parties' dispute about the amount of loss is whether the home should have been repaired instead of replaced. Notably, courts "have reached seemingly divergent conclusions about whether a dispute over the extent of damage or method of repair is appraisable, though most courts seem to find those issues inherent in determining the amount of loss." *Windsor v. State Farm Fire & Cas. Co.*, No. 22-CV-734-SCD, 2023 WL 4197462, at *7 (E.D. Wis. June 27, 2023) (reviewing cases and finding causation is an amount-of-loss question for the appraisal panel when an insurer admits that there is covered loss, the amount of which is disputed). However, the parties do not discuss that issue, so this court has not addressed it.

...

ORDER

IT IS ORDERED that defendant Auto-Owners Insurance Company's motion to compel appraisal (dkt. #9) is DENIED.

Entered this 25th day of September, 2024.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge